UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)
v. )
)
DIEGO PINEDA SANCHEZ, )
    a/k/a "Botas," "Boots," and )
CARLOS PARRA-PEDROZA )
    a/k/a "Walt," "Walter," "Walt Disney" )
JOSE ABEL MENDOZA-PARRA, )
    a/k/a "Robin," )
MARIA LOERA ALVARADO, )
    a/k/a "Samys@m" )
ERNESTO RUIZ-RAMIREZ, )
MARIO HERRERA, )
ANTHONY LEIVA, )
TEODOCIO CARO, )
LUIS REYNA-TELLEZ, )
HECTOR CHAVEZ CUEVAS, )
JUAN CARLOS NUNEZ GALVEZ, )
JOSE SANANTONIO, )
PEDRO SAUCEDO-PALOMINOS, )
OMAR LOPEZ-CABRERA, )
VIRGIL DURBIN, )
VALENTIN RODRIGUEZ, )
ALMA LORENA ORTIZ DE ROSAS VERA, )
CASMIRO ISAIAS-PADILLA, )
FELIX LEMUS-GUEVARA, )
PEDRO URQUIZA-OSORIO, )
LUIS ARMANDO ACOSTA VIZCARRA, )
JOEL ESTRADA, )
HARRANAH SAMORI, )
GABRIEL SALCEDO, )
TOMAS SALGADO REYNA, )
OSCAR ACOSTA, )
FEDERICO BARRERA-PEREZ, )
EMMANUEL DIAZ, )
JOSE HERNANDEZ OCHOA, and )
ALFONSO NEVAREZ )

JUDGE LEINENWEBER

Case No. 14 CR 539

MAGISTRATE JUDGE MASON

Violation: Title 18, United States
Code, Sections 1956(a)(1)(A)(i),
1956(a)(1)(B)(i), 1956(h).

**SUPERSEDING INDICTMENT**

FILED

MAR X 5 2015

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1

## COUNT ONE

The SPECIAL FEBRUARY 2014 GRAND JURY charges:

1.    Beginning no later than in or about 2011 and continuing to at least in or about

September 2014, in the Northern District of Illinois, Eastern Division, and elsewhere,

DIEGO PINEDA SANCHEZ, a/k/a "Botas," "Boots,"
CARLOS PARRA-PEDROZA, a/k/a "Walter," "Walt Disney," "Willy," "Don Walt," "Ary,"
JOSE ABEL MENDOZA-PARRA, a/k/a "Robin,"
MARIA LOERA ALVARADO, a/k/a "Samys@m"
ERNESTO RUIZ-RAMIREZ,
MARIO HERRERA,
ANTHONY LEIVA,
TEODOCIO CARO,
LUIS REYNA-TELLEZ,
HECTOR CHAVEZ CUEVAS,
JUAN CARLOS NUNEZ GALVEZ,
JOSE SANANTONIO,
PEDRO SAUCEDO-PALOMINOS,
OMAR LOPEZ-CABRERA,
VIRGIL DURBIN,
VALENTIN RODRIGUEZ,
ALMA LORENA ORTIZ DE ROSAS VERA,
CASMIRO ISAIAS-PADILLA,
FELIX LEMUS-GUEVARA,
PEDRO URQUIZA-OSORIO,
LUIS ARMANDO ACOSTA VIZCARRA,
JOEL ESTRADA,
HARRANAH SAMORI,
GABRIEL SALCEDO,
TOMAS SALGADO REYNA,
OSCAR ACOSTA,
FEDERICO BARRERA-PEREZ,
EMMANUEL DIAZ,
JOSE HERNANDEZ OCHOA, and
ALFONSO NEVAREZ,

defendants herein, did conspire with each other and with others known and unknown to the

Grand Jury:

a.    to knowingly conduct and attempt to conduct a financial transaction

involving proceeds of a specified unlawful activity, namely, the felonious buying and selling and

otherwise dealing in a controlled substance, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity, with the intent to promote the carrying on of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

b. to knowingly conduct and attempt to conduct a financial transaction involving proceeds of a specified unlawful activity, namely, the felonious buying and selling and otherwise dealing in a controlled substance, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity, and that the transaction was designed, in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

c. to knowingly transport, transmit, and transfer, and attempt to knowingly transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of a specified unlawful activity, namely, the felonious buying and selling and otherwise dealing in a controlled substance, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

d. to knowingly transport, transmit, and transfer, and attempt to knowingly transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, namely, the felonious buying and selling and otherwise dealing in a controlled substance, and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and

3

disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B).

## Overview of the Conspiracy

2.      It was part of the conspiracy that, from no later than in or about 2011 to at least in or about September 2014, DIEGO PINEDA SANCHEZ and CARLOS PARRA-PEDROZA led a Mexico-based money laundering organization ("MLO") that was responsible for transporting, transmitting, and transferring large amounts of United States currency derived from the buying and selling of controlled substances ("drug proceeds") from the United States to Mexico. DIEGO PINEDA SANCHEZ and CARLOS PARRA-PEDROZA arranged to have drug proceeds collected from various co-conspirators throughout the Unites States; to use those drug proceeds to purchase scrap and fine gold; and to sell that gold to U.S.-based cash-for-gold companies, which in turn directed payment for those sales to CARLOS PARRA-PEDROZA and other co-conspirators in Mexico.   DIEGO PINEDA SANCHEZ and CARLOS PARRA-PEDROZA also arranged to have drug proceeds wire transferred to a U.S.-based bank account controlled by a Mexican brokerage firm.

## The Delivery of United States Currency to Third Parties

3.      It was further part of the conspiracy that DIEGO PINEDA SANCHEZ and others negotiated agreements with various Mexico-based individuals who owned and controlled drug proceeds located in the United States ("drug proceeds owners") to have the MLO transport, transmit, and transfer the drug proceeds from various locations in the United States, including the Chicago area, to Mexico, on behalf of the drug proceeds owners.

4.      It was further part of the conspiracy that, after DIEGO PINEDA SANCHEZ negotiated the agreements with the drug proceeds owners, DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, MARIA LOERA

4

ALVARADO, and others directed, or caused others to direct, various co-conspirators (the "drug money couriers") to deliver large amounts of drug proceeds to various individuals (the "drug money collectors") in the Northern District of Illinois, and elsewhere, knowing that the property involved in the deliveries represented the proceeds of some form of unlawful activity. The drug money couriers included ERNESTO RUIZ-RAMIREZ, MARIO HERRERA, ANTHONY LEIVA, TEODOCIO CARO, LUIS REYNA-TELLEZ, HECTOR CHAVEZ CUEVAS, JUAN CARLOS NUNEZ GALVEZ, JOSE SANANTONIO, PEDRO SAUCEDO-PALOMINOS, OMAR LOPEZ-CABRERA, VIRGIL DURBIN, VALENTIN RODRIGUEZ, ALMA LORENA ORTIZ DE ROSAS VERA, CASMIRO ISAIAS-PADILLA, FELIX LEMUS-GUEVARA, PEDRO URQUIZA-OSORIO, LUIS ARMANDO ACOSTA VIZCARRA, JOEL ESTRADA, HARRANAH SAMORI, GABRIEL SALCEDO, TOMAS SALGADO REYNA, OSCAR ACOSTA, FEDERICO BARRERA-PEREZ, EMMANUEL DIAZ, JOSE HERNANDEZ OCHOA, ALFONSO NEVAREZ, and others.

5.      It was further part of the conspiracy that, between 2011 and September 2014, DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, MARIA LOERA ALVARADO, and others, through telephone calls and electronic messages, instructed, or caused others to instruct, drug money collectors to collect drug proceeds from the drug money couriers. The drug money collectors included Individual A, undercover law enforcement agents posing as drug money collectors, and other U.S.-based individuals. On or about April 26, 2013, Individual A began cooperating with law enforcement.

6.      It was further part of the conspiracy that DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, MARIA LOERA ALVARADO, and the drug proceeds owners caused the drug money couriers to use code names, code words, and particular telephone numbers to arrange covert deliveries of drug proceeds to the drug money

5

collectors. DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, MARIA LOERA ALVARADO, and others communicated, or caused others to communicate, these telephone numbers and code names to the drug money couriers and drug money collectors.

7.    It was further part of the conspiracy that the drug money couriers and other co-conspirators acting on their behalf spoke to the drug money collectors by telephone to arrange the delivery of drug proceeds. During these calls, the drug money couriers and other co-conspirators acting on their behalf used and responded to code words and code names, which code names were provided by the Mexico-based co-conspirators. The drug money couriers often coordinated with Mexico-based co-conspirators, including DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, MARIA LOERA ALVARADO, and the drug proceeds owners, concerning the timing of the deliveries of the drug proceeds and the amounts of proceeds to be delivered.

8.    It was further part of the conspiracy that the drug money couriers delivered the drug proceeds in a covert manner to the drug money collectors at parking lots, side streets, and other locations in the Northern District of Illinois, knowing that the property involved in the deliveries represented the proceeds of some form of unlawful activity. The drug proceeds were generally transferred in increments well exceeding $10,000.

9.    It was further part of the conspiracy that from May 2013 through September 2014, defendants and other co-conspirators delivered, attempted to deliver, or caused to be delivered approximately $4.6 million in drug proceeds to Individual A and undercover law enforcement agents, thereby concealing and disguising the nature, the location, the source, the ownership, and the control of the drug proceeds.

*The Purchase and Resale of Gold*

10.  It was further part of the conspiracy that DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, and other co-conspirators directed Individual A and U.S.-based co-conspirators to use the drug proceeds that they collected from the drug money couriers to purchase fine and scrap gold. DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, and others directed Individual A and U.S.-based co-conspirators to use drug proceeds to purchase the gold to conceal and disguise the nature, location, source, ownership, and control of the drug proceeds.

11.  It was further part of the conspiracy that DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, and other co-conspirators directed Individual A and U.S.-based co-conspirators to send the gold that they purchased to cash-for-gold companies, thereby concealing and disguising the nature, location, source, ownership, and control of the drug proceeds, and facilitating the transfer of drug proceeds earned from drug sales in the United States to the drug proceeds owners.

12.  It was further part of the conspiracy that, at the direction of DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, and others, Individual A and U.S.-based co-conspirators sent the gold that they purchased with the drug proceeds to cash-for gold companies, including a Florida-based refinery ("Refinery A") and a California-based jewelry store ("Refinery B"), using Federal Express stores located throughout the Northern District of Illinois. For many of the gold shipments, CARLOS PARRA-PEDROZA caused Individual A to create and use a fictitious name and business when identifying the sender on Federal Express shipping documents.

13.  It was further part of the conspiracy that between no later than August 2011 and at least May 2014, DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, JOSE ABEL

MENDOZA-PARRA, and other co-conspirators sold, or caused others to sell, approximately $98.7 million worth of gold to Refinery A, and approximately $322,000 worth of gold to Refinery B.

14.     It was further part of the conspiracy that CARLOS PARRA-PEDROZA and other co-conspirators directed Refinery A and Refinery B to send payments for the gold shipments received from Individual A and U.S.-based co-conspirators to CARLOS PARRA-PEDROZA and other co-conspirators in Mexico.

*Wire Transfers*

15.     It was further part of the conspiracy that, between May 2014 and September 2014, DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, and other co-conspirators directed Individual A and an undercover agent to wire transfer drug proceeds collected from the drug money couriers to Citibank bank account number XXXX5306 ("Bank Account A"), which is a U.S.-based correspondent bank account controlled by a Mexican brokerage firm, in order to conceal the nature, location, source, ownership, and control of the proceeds, and to facilitate the transfer of drug proceeds earned from drug sales in the United States to the drug proceeds owners. At the direction of DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, and other co-conspirators, Individual A and undercover agents made multiple wire transfers totaling approximately $588,000 to Bank Account A.

16.     It was further part of the conspiracy that the defendants and others known and unknown to the Grand Jury did conceal and hide and cause to be concealed and hidden, the purposes and the acts done in furtherance of the conspiracy, through the use of codenames, coded language, counter-surveillance, and other means to avoid detection and apprehension by law enforcement authorities.

In violation of Title 18, United States Code, Sections 1956(h) and 2.

## COUNTS TWO THROUGH THIRTY-SIX

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about the dates set forth below, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendants, as set forth below, knowingly conducted and attempted to conduct the following financial transactions listed below, namely, the delivery of United States currency to third parties, in or affecting interstate and foreign commerce, each such financial transaction constituting a separate count, which financial transactions involved the proceeds of a specified unlawful activity, namely, the felonious buying, selling, and otherwise dealing in a controlled substance, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting such financial transactions, the defendant knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity:

| COUNT | DEFENDANT | DATE OF FINANCIAL TRANSACTION | FINANCIAL TRANSACTION |
|-------|-----------|-------------------------------|------------------------|
| Two | DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, and VALENTIN RODRIGUEZ | June 5, 2013 | delivery of approximately $110,000 |
| Three | CARLOS PARRA-PEDROZA and VALENTIN RODRIGUEZ | June 10, 2013 | delivery of approximately $30,010 |
| Four | CARLOS PARRA-PEDROZA and TEODOCIO CARO | June 11, 2013 | delivery of approximately $98,999 |
| Five | CARLOS PARRA-PEDROZA and TEODOCIO CARO | June 25, 2013 | delivery of approximately $283,740 |
| Six | DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, and CASMIRO ISAIAS-PADILLA | July 10, 2013 | delivery of approximately $139,470 |

| COUNT | DEFENDANT | DATE OF FINANCIAL TRANSACTION | FINANCIAL TRANSACTION |
|---|---|---|---|
| Seven | DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, and JOSE HERNANDEZ OCHOA | July 16, 2013 | delivery of approximately $29,990 |
| Eight | CARLOS PARRA-PEDROZA and HECTOR CHAVEZ CUEVAS | July 24, 2013 | delivery of approximately $200,780 |
| Nine | CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, and ANTHONY LEIVA | September 11, 2013 | attempted delivery of at least $150,000 |
| Ten | CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, and MARIO HERRERA | September 13, 2013 | delivery of approximately $100,220 |
| Eleven | CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, and PEDRO URQUIZA-OSORIO | September 20, 2013 | delivery of approximately $50,000 |
| Twelve | CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, PEDRO SAUCEDO-PALOMINOS, and FELIX LEMUS-GUEVARA | September 27, 2013 | delivery of approximately $120,000 |
| Thirteen | CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, and LUIS ARMANDO ACOSTA VIZCARRA | October 11, 2013 | delivery of approximately $89,980 |
| Fourteen | DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, and TOMAS SALGADO REYNA | October 24, 2013 | attempted delivery of approximately $100,075 |
| Fifteen | CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, MARIO HERRERA, and PEDRO SAUCEDO-PALOMINOS | November 7, 2013 | attempted delivery of approximately $170,000 |
| Sixteen | DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, and ERNESTO RUIZ-RAMIREZ | December 10, 2013 | delivery of approximately $50,020 |
| Seventeen | CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, and JUAN CARLOS NUNEZ GALVEZ | December 12, 2013 | delivery of approximately $20,000 |

| COUNT | DEFENDANT | DATE OF FINANCIAL TRANSACTION | FINANCIAL TRANSACTION |
|---|---|---|---|
| Eighteen | CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, and JOEL ESTRADA | January 13, 2014 | delivery of approximately $62,000 |
| Nineteen | DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, and JOSE ABEL MENDOZA-PARRA | January 14, 2014 | delivery of approximately $66,990 |
| Twenty | CARLOS PARRA-PEDROZA, JOSE ABEL MENDOZA-PARRA, and ERNESTO RUIZ-RAMIREZ | January 17, 2014 | delivery of approximately $107,280 |
| Twenty-One | DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, and GABRIEL SALCEDO | January 22, 2014 | attempted delivery approximately $110,000 |
| Twenty-Two | CARLOS PARRA-PEDROZA and OMAR LOPEZ-CABRERA | January 22, 2014 | delivery of approximately $150,000 |
| Twenty-Three | CARLOS PARRA-PEDROZA and HARRANAH SAMORI | February 27, 2014 | delivery of approximately $59,960 |
| Twenty-Four | DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, and ALFONSO NEVAREZ | March 26, 2014 | delivery of approximately $10,280 |
| Twenty-Five | DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, and EMMANUEL DIAZ | March 27, 2014 | delivery of approximately $37,220 |
| Twenty-Six | DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, and OSCAR ACOSTA | March 31, 2014 | delivery of approximately $100,020 |
| Twenty-Seven | CARLOS PARRA-PEDROZA and ALMA LORENA ORTIZ DE ROSAS VERA | June 25, 2014 | delivery of approximately $80,000 |
| Twenty-Eight | CARLOS PARRA-PEDROZA and ALMA LORENA ORTIZ DE ROSAS VERA | June 25, 2014 | attempted delivery of approximately $59,452 |
| Twenty-Nine | CARLOS PARRA-PEDROZA and JUAN CARLOS NUNEZ GALVEZ | July 16, 2014 | delivery of approximately $62,350 |
| Thirty | CARLOS PARRA-PEDROZA and JUAN CARLOS NUNEZ GALVEZ | July 23, 2014 | attempted delivery of at least $100,000 |

| COUNT | DEFENDANT | DATE OF FINANCIAL TRANSACTION | FINANCIAL TRANSACTION |
|---|---|---|---|
| Thirty-One | DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, and LUIS REYNA-TELLEZ | July 25, 2014 | delivery of approximately $143,980 |
| Thirty-Two | DIEGO PINEDA SANCHEZ and MARIA LOERA ALVARADO | August 5, 2014 | delivery of approximately $132,000 |
| Thirty-Three | DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, and FEDERICO BARRERA-PEREZ | August 8, 2014 | delivery of approximately $100,000 |
| Thirty-Four | CARLOS PARRA-PEDROZA and LUIS REYNA-TELLEZ | August 14, 2014 | attempted delivery of approximately $210,960 |
| Thirty-Five | CARLOS PARRA-PEDROZA, ERNESTO RUIZ-RAMIREZ, and JOSE SANANTONIO | August 26, 2014 | attempted delivery of at least $100,000 |
| Thirty-Six | CARLOS PARRA-PEDROZA and VIRGIL DURBIN | August 28, 2014 | delivery of approximately $140,000 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i), and 2.

## COUNTS THIRTY-SEVEN THROUGH FIFTY-EIGHT

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about the dates set forth below, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendants, as set forth below, knowingly conducted the following financial transactions listed below, namely, the sale of quantities of gold to Refinery A and Refinery B, in or affecting interstate and foreign commerce, each such financial transaction constituting a separate count, which financial transactions involved the proceeds of a specified unlawful activity, namely, the felonious buying, selling, and otherwise dealing in a controlled substance, (i) with the intent to promote the carrying on of the specified unlawful activity and (ii) knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting such financial transactions, the defendant knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity:

| COUNT | DEFENDANT | DATE OF FINANCIAL TRANSACTION | FINANCIAL TRANSACTION |
|---|---|---|---|
| Thirty-Seven | DIEGO PINEDA SANCHEZ and CARLOS PARRA-PEDROZA | June 5, 2013 | sale of approximately 808.6 grams of gold to Refinery A |
| Thirty-Eight | DIEGO PINEDA SANCHEZ and CARLOS PARRA-PEDROZA | June 7, 2013 | sale of approximately 2,342 grams of gold to Refinery A |
| Thirty-Nine | CARLOS PARRA-PEDROZA | June 13, 2013 | sale of approximately 622.07 grams of gold to Refinery A |

| COUNT | DEFENDANT | DATE OF FINANCIAL TRANSACTION | FINANCIAL TRANSACTION |
|---|---|---|---|
| Forty | CARLOS PARRA-PEDROZA | June 17, 2013 | sale of approximately 54.15 ounces of gold to Refinery A |
| Forty-One | CARLOS PARRA-PEDROZA | June 18, 2013 | sale of approximately 14 ounces of gold to Refinery A |
| Forty-Two | CARLOS PARRA-PEDROZA | June 27, 2013 | sale of approximately 6,622 grams of gold to Refinery A |
| Forty-Three | DIEGO PINEDA SANCHEZ and CARLOS PARRA-PEDROZA | July 12, 2013, to July 15, 2013 | sale of approximately 3,248 grams of gold to Refinery A |
| Forty-Four | DIEGO PINEDA SANCHEZ and CARLOS PARRA-PEDROZA | July 18, 2013 | sale of approximately 22 ounces of gold to Refinery A |
| Forty-Five | CARLOS PARRA-PEDROZA | July 30, 2013 | sale of approximately 4,435 grams of gold to Refinery A |
| Forty-Six | CARLOS PARRA-PEDROZA and JOSE ABEL MENDOZA-PARRA | September 17, 2013 | sale of approximately 2,199 grams of gold to Refinery A |
| Forty-Seven | CARLOS PARRA-PEDROZA and JOSE ABEL MENDOZA-PARRA | September 24, 2013 | sale of approximately 1,124 grams of gold to Refinery A |
| Forty-Eight | CARLOS PARRA-PEDROZA and JOSE ABEL MENDOZA-PARRA | October 2, 2013 | sale of approximately 2,684 grams of gold to Refinery A |
| Forty-Nine | CARLOS PARRA-PEDROZA and JOSE ABEL MENDOZA-PARRA | October 17, 2013 | sale of approximately 2,093 grams of gold to Refinery A |

| COUNT | DEFENDANT | DATE OF FINANCIAL TRANSACTION | FINANCIAL TRANSACTION |
|---|---|---|---|
| Fifty | DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, and JOSE ABEL MENDOZA-PARRA | December 12, 2013 | sale of approximately 1,181 grams of gold to Refinery A |
| Fifty-One | CARLOS PARRA-PEDROZA and JOSE ABEL MENDOZA-PARRA | December 17, 2013 | sale of approximately 482 grams of gold to Refinery A |
| Fifty-Two | CARLOS PARRA-PEDROZA and JOSE ABEL MENDOZA-PARRA | January 15, 2014 | sale of approximately 47 ounces of gold to Refinery A |
| Fifty-Three | DIEGO PINEDA SANCHEZ, CARLOS PARRA-PEDROZA, and JOSE ABEL MENDOZA-PARRA | January 16, 2014 | sale of approximately 52 ounces of gold to Refinery A |
| Fifty-Four | CARLOS PARRA-PEDROZA and JOSE ABEL MENDOZA-PARRA | January 21, 2014 | sale of approximately 2,550 grams of gold to Refinery A |
| Fifty-Five | CARLOS PARRA-PEDROZA | January 24, 2014 | sale of approximately 3,528 grams of gold to Refinery A |
| Fifty-Six | CARLOS PARRA-PEDROZA | March 12, 2014 | sale of approximately 76 ounces of gold to Refinery B |
| Fifty-Seven | DIEGO PINEDA SANCHEZ and CARLOS PARRA-PEDROZA | March 31, 2014 | sale of approximately 35 ounces of gold to Refinery B |
| Fifty-Eight | CARLOS PARRA-PEDROZA | April 7, 2014 | sale of approximately 74.8 ounces of gold bars to Refinery B |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (B)(i), and 2.

## COUNTS FIFTY-NINE THROUGH SIXTY-THREE

The SPECIAL FEBRUARY 2014 GRAND JURY further charges:

On or about the dates set forth below, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendants, as set forth below, knowingly conducted the following financial transactions listed below, namely, the wire transfer of money to Citibank bank account number XXXX5306 ("Bank Account A"), in or affecting interstate and foreign commerce, each such financial transaction constituting a separate count, which financial transactions involved the proceeds of a specified unlawful activity, namely, the felonious buying, selling, and otherwise dealing in a controlled substance, (i) with the intent to promote the carrying on of said specified unlawful activity and (ii) knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting such financial transactions, the defendant knew that the property involved in the financial transactions, represented the proceeds of some form of unlawful activity:

| COUNT | DEFENDANT | DATE OF FINANCIAL TRANSACTION | FINANCIAL TRANSACTION |
|---|---|---|---|
| Fifty-Nine | CARLOS PARRA-PEDROZA | June 25, 2014 | wire transfer of approximately $76,800 |
| Sixty | CARLOS PARRA-PEDROZA | July 17, 2014 | wire transfer of approximately $59,856 |
| Sixty-One | DIEGO PINEDA SANCHEZ and CARLOS PARRA-PEDROZA | July 25, 2014 | wire transfer of approximately $138,221 |
| Sixty-Two | DIEGO PINEDA SANCHEZ and CARLOS PARRA-PEDROZA | August 8, 2014 | wire transfer of approximately $96,000 |

| COUNT | DEFENDANT | DATE OF FINANCIAL TRANSACTION | FINANCIAL TRANSACTION |
|---|---|---|---|
| Sixty-Three | CARLOS PARRA-PEDROZA | August 29, 2014 | wire transfer of approximately $134,400 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (B)(i), and 2.

## FORFEITURE ALLEGATION

The SPECIAL FEBRUARY 2014 GRAND JURY further alleges:

1. The allegations contained in Counts One through Sixty Three of this Superseding Indictment are realleged and incorporated here for the purpose of alleging that certain property is subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(1).

2. As a result of their violations of Title 18, United States Code, Section 1956, as alleged in the Superseding Indictment,

DIEGO PINEDA SANCHEZ, a/k/a "Botas," "Boots,"
CARLOS PARRA-PEDROZA, a/k/a "Walter," "Walt Disney," "Willy," "Don Walt," "Ary,"
JOSE ABEL MENDOZA-PARRA, a/k/a "Robin,"
MARIA LOERA ALVARADO, a/k/a "Samys@m"
ERNESTO RUIZ-RAMIREZ,
MARIO HERRERA,
ANTHONY LEIVA,
TEODOCIO CARO,
LUIS REYNA-TELLEZ,
HECTOR CHAVEZ CUEVAS,
JUAN CARLOS NUNEZ GALVEZ,
JOSE SANANTONIO,
PEDRO SAUCEDO-PALOMINOS,
OMAR LOPEZ-CABRERA,
VIRGIL DURBIN,
VALENTIN RODRIGUEZ,
ALMA LORENA ORTIZ DE ROSAS VERA,
CASMIRO ISAIAS-PADILLA,
FELIX LEMUS-GUEVARA,
PEDRO URQUIZA-OSORIO,
LUIS ARMANDO ACOSTA VIZCARRA,
JOEL ESTRADA,
HARRANAH SAMORI,
GABRIEL SALCEDO,
TOMAS SALGADO REYNA,
OSCAR ACOSTA,
FEDERICO BARRERA-PEREZ,
EMMANUEL DIAZ,
JOSE HERNANDEZ OCHOA, and
ALFONSO NEVAREZ,

19

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section, 982(a)(1), any and all right, title and interest in property, real and personal, involved in such offenses, or any property traceable to such property.

3.      The interests of the defendants subject to forfeiture pursuant to Title 18, United States Code, Section, 982(a)(1), include but are not limited to, funds in the amount of approximately $99,582,100, which includes:

(a)      approximately $98,779,066 worth of gold sold to Refinery A;

(b)      approximately $322,116 worth of gold sold to Refinery B;

(c)      approximately $588,787 wired transferred to Bank Account A;

(d)      approximately $138,860 seized from JUAN CARLOS NUNEZ GALVEZ on or about July 23, 2014; and

(e)      approximately $73,276 seized from Individual D on or about October 2, 2014.

4.      If any of the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section, 982(a)(1), as a result of any act or omission of the defendants:

(a)      Cannot be located upon the exercise of due diligence;

(b)      Has been transferred or sold to, or deposited with, a third party;

(c)      Has been placed beyond the jurisdiction of the Court;

(d)      Has been substantially diminished in value; or

(e)      Has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property, under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section, 982(b)(1).

All pursuant to Title 18, United States Code, Section 982(a)(1).

. A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY

21